# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **CAROL A. ANDERSON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **5:12-cv-3697-AKK** |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiff Carol A. Anderson ("Anderson") brings this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). Doc. 1. This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence, and, therefore, **AFFIRMS** the decision denying benefits.

## I. Procedural History

Anderson filed her applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") on November 27, 2006 alleging a disability onset date of December 30, 2005, due to lower back and left leg pain and swollen ankles and knees. (R. 101, 134, 139, 611). After the SSA denied her applications, Anderson requested a hearing before the ALJ which was held September 24, 2008. (R. 50, 57, 61, 662). At the hearing, Anderson was 43 years old, with a ninth grade education and past relevant work as a cook and cashier at various fast food restaurants. (R. 140, 144, 146).

The ALJ denied Anderson's claims on February 19, 2009, determining that Anderson was disabled, but that "[i]f [Anderson] were to lose weight as prescribed" she "could perform a significant number of jobs in the national economy." (R. 29-44). Anderson sought a review of the ALJ's decision by the Appeals Council on March 4, 2009, arguing that the ALJ improperly considered Anderson's weight in the context of compliance with prescribed treatment. (R. 68-69, 199-208). The Appeals Council granted review, and on March 5, 2010, vacated and remanded the case, noting that the ALJ's "analysis of the claimant's obesity is at odds with the Social Security policy as set out in Social Security Ruling 02-01p." (R. 74-78). Further, the Appeals Council found that there was no

indication of a prescription for a weight loss treatment and that the SSA rarely uses "failure to follow a prescribed treatment" in obesity cases to deny benefits. (R. 76-77). The Appeals Council directed the ALJ to update the medical record, obtain evidence from a medical expert to clarify the nature and severity of the impairments, including obesity, give further consideration to Anderson's RFC and reconsider Anderson's obesity in a manner consistent with SSR 02-1p. (R. 77).

On remand, a new ALJ held a hearing on October 14, 2011, and, ultimately, also denied Anderson's claims. (R. 9, 642). The November 23, 2011 denial became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 3-5). Anderson then filed this action pursuant to 42 U.S.C. § 1383(c)(3). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529

(11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform her or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can

do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

information omitted) (emphasis added).  Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012.  As such, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

## IV.  The ALJ's Decision

In performing the five step analysis, the ALJ initially determined that Anderson met the insured status requirements of the Act through December 31, 2007.  (R. 15).  Moving to the first Step, the ALJ found that Anderson had not engaged in substantial gainful activity since December 30, 2005, the alleged onset

date, and, therefore, met Step One. *Id*. Next, the ALJ found that Anderson satisfied Step Two because she suffered from the severe impairments of "morbid obesity, lumbar degenerative disc disease, and degenerative arthritis of the left knee and ankle." *Id*. The ALJ then proceeded to the next step and found that Anderson failed to satisfy Step Three because she "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" (R. 17). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Anderson

> can continuously lift and carry up to 10 pounds, frequently lift and carry up to 50 pounds, and occasionally lift and carry up to 100 pounds. During the total course of [an] eight-hour day, she can sit for six hours total limited to no more than two hours at a time; stand two out of eight hours for no more than an hour at a time; and walk for two hours total, limited to one hour at a time. Regarding use of hands she has no limitations right or left. She has no limitations in the operation of foot controls. She cannot climb ladders or scaffolds. She should not be exposed to loud (heavy traffic) noises.

(R. 18). In light of Anderson's Residual Functional Capacity ("RFC"), the ALJ held that Anderson is "unable to perform any past relevant work." (R. 21). Finally, in Step Five, the ALJ considered Anderson's age, education, work experience, and RFC and determined that "jobs exist in significant numbers in the national economy that [Anderson] can perform." (R. 22). Therefore, the ALJ

found that Anderson "has not been under a disability, as defined in the Social Security Act, from December 30, 2005, through the date of this decision." (R. 23).

## V.  Analysis

The court turns now to Anderson's contentions that the ALJ erred by failing to (1) obtain the opinion of a medical expert in compliance with the Appeals Council's directive, and (2) develop a RFC based on substantial evidence. *See* doc. 9 at 9-11.  The court addresses each contention in turn.

### A.  **Alleged failure to obtain opinion of a medical expert in compliance with the Appeals Council's directive**

Anderson's first contention of error is that the ALJ failed to comply with the Appeals Council's directive that the ALJ "[o]btain evidence from a medical expert to clarify the nature and severity of the claimant's impairments, including her obesity." (R. 77); *see also* doc. 9 at 8, 11.  The court notes that generally an ALJ "has a basic duty to develop a full and fair record," *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003), but is not obligated to automatically obtain testimony from a medical expert.  *See* 20 C.F.R. § 404.1529 (the ALJ "*may* ask for and consider the opinion of a medical . . . expert concerning whether ...[a claimant's] impairment(s) could reasonably be expected to produce [her or her] alleged symptoms.") (emphasis added).  Nonetheless, because the Appeals Council

ordered the ALJ to obtain evidence from a medical expert, the failure to do so may constitute reversible error. However, based on the court's review of the record, no such error occurred here because the ALJ satisfied the medical expert requirement by obtaining opinion evidence from a consultative neurological examiner, Eston G. Norwood, M.D. *See* (R. 561-67).

Dr. Norwood saw Anderson on June 7, 2011, reviewed Anderson's medical records, and opined that Anderson had "[d]iffuse pain without neurologic deficit," and no "evidence of physical neurologic impairment to do work related activities including sitting, standing, walking, lifting, carrying, [or] handling objects." (R. 561). Overall, Dr. Norwood opined that "[Anderson] may be limited by back pain, but there is no neurologic deficit to produce limitation." *Id*. Dr. Norwood also assessed Anderson's physical ability to do work-related activities, which the ALJ fully adopted in Anderson's RFC. *See* (R. 18).

Anderson asserts that "[a]n examination by a neurologist who did not even take vital signs where the single biggest issue was that of weight did not constitute or replace an ME review, particularly when there were other opinions by examining physicians." Doc. 9 at 11-12. Apparently, Anderson is arguing that because Dr. Norwood failed to take her vital signs and weight, the ALJ erred in relying on Dr. Norwood's opinion. The court finds this argument unavailing

because while Dr. Norwood noted in his report that his blood pressure cuff was too small to measure Anderson's blood pressure, it is clear that he conducted a thorough physical examination. (R. 561). For example, Dr. Norwood noted that Anderson

> has 2+ pitting edema over the ankles bilaterally. I do not see evidence of dermatitis, ulceration or significant varicosities. She reports discomfort throughout but is able to demonstrate full active and passive range of motion in the neck, spine, limbs. Gait is not remarkable. Strength is normal in arms and legs. Finger to nose testing is normal. Pinprick appreciation is normal over the limbs. Proprioception is normal. Reflexes are symmetric rating 1+ in the arms, 1+ in the knees and 2+ at the ankles. There is no muscle spasm. She is able to arise from a sitting position without assistance. She reports discomfort, but is able to walk on her heels and on her toes independently. There is no muscle atrophy. Strength remains good after repetitive exercise. She can oppose the thumb and make a fist bilaterally. She can use the hands independently to open and close a handicapped accessible door and to button and unbutton. There is no evidence of medication side effect.

*Id*. In short, the ALJ's solicitation of Dr. Norwood's consultative exam sufficiently satisfied the Appeals Council's mandate to obtain the opinion of a medical expert. Accordingly, the court finds no error in that regard.

### B.     Alleged failure to determine a RFC based on substantial evidence

Anderson contends next that the ALJ erred by purportedly failing to base Anderson's RFC on substantial evidence. Doc. 9 at 9. In support of her contentions, Anderson raises several arguments which the court discusses below.

### *1.     Alleged failure to discuss the previous ALJ's 2009 decision*

Anderson asserts that the ALJ erred in determining that Anderson has a "less restrictive RFC [than the previous ALJ determined] on virtually the same set of facts." Doc. 9 at 9. According to Anderson, the first ALJ's ruling is the "administrative law of the case" and the second ALJ erred when he "fail[ed] to discuss the earlier [ALJ's] ruling or provide reasons for setting it aside where there is no evidence of improvement to account for a higher RFC." Doc. 9 at 10. Anderson's argument misses the mark, in part, because she overlooks that the Appeals Council vacated the first ALJ's decision and remanded the case to a new ALJ for review. *See* (R. 76). In fact, the Appeals Council charged the new ALJ to reach his own independent decision after obtaining new evidence. (R. 78). While the second ALJ is required to discuss the same medical record since it is relevant to Anderson's disability assessment, there is no requirement that the second ALJ discuss the first ALJ's vacated opinion or to explain why he disagreed with certain aspects of it. *See generally* 20 C.F.R. part 400, *et seq*. Moreover, in this Circuit, the "law of the case doctrine" is a concept grounded in judicial proceedings that has no application to administrative hearing decisions.[2] Rather, "[t]he law of the

---

[2] Moreover, administrative res judicata does not apply to this case since the Appeals Council vacated the first ALJ's decision, rendering the case undecided. When a prior determination or decision with respect to the same party, facts, and issue(s) has become

case doctrine . . . bars consideration of only those legal issues that were actually, or by necessary implication, decided in the former [court] proceeding." *Jackson v. State of Alabama State Tenure Comm'n,* 405 F.3d 1276, 1283 (11th Cir. 2005) (quoting *Oladeinde v. City of Birmingham,* 230 F.3d 1275, 1288 (11th Cir. 2000)). In sum, the court finds no error with the ALJ's failure to discuss the previous ALJ's decision.

### 2. *Alleged failure to consider Anderson's obesity*

Anderson also contends that the "ALJ's RFC findings are further not based on substantial evidence because the ALJ did not adequately consider obesity as a factor in his RFC findings as required under SSR 02-1p which recognizes that obesity can cause limitations in all exertional and postural functions; that it can affect an individual's ability to sustain routine movement and work activity." Doc. 9 at 10. Contrary to Anderson's contentions, after reviewing the ALJ's decision, it is clear that the ALJ considered Anderson's obesity. In fact, the ALJ stated specifically that "[t]he undersigned has considered Social Security Ruling 02-01p involving evaluation of obesity." (R. 19). Moreover, the ALJ outlined Ruling 02-

---

administratively final, Administrative Law Judges and the Appeals Council may use the doctrine of administrative res judicata either to dismiss a request for hearing entirely or to refuse to consider any one or more such issues, when a subsequent application arises out of the same title of the Act. *See* 20 C.F.R. §§ 404.957(c)(1) and 416.1457(c)(1). The purpose of administrative res judicata is to prevent claimants from "relitigating" their claims after the matters raised have already been finally decided. *See id.*

01p and stated,

> With regard to her weight, the undersigned finds that obesity is the claimant's main impairment and is a condition that limits her mobility. Obesity does impose significant stress on her muscles and joints and could be expected to cause some pain and discomfort but not to the extent alleged by the claimant. Despite her allegations that she is physically limited from performing even sedentary work activities, and based on the assessment of the consultative neurological examiner, the undersigned finds that her impairments, including obesity, do not restrict her ability to perform routine movement and necessary physical activity within a limited range of light work environment, as detailed above.

(R. 19-20). These findings establish unequivocally that the ALJ considered Anderson's obesity, referencing Ruling 02-01p, as directed by the Appeals Council. Indeed, based on the record, the ALJ determined that Anderson's obesity did not prevent her from performing light work. As discussed, *infra*, the substantial evidence supports the ALJ's RFC determination. Accordingly, the court finds no error in the ALJ's RFC determination regarding Anderson's obesity.

### 3.  *The ALJ's review of the evidence in the record*

Finally, Anderson challenges the ALJ's review of the evidence and contends that the ALJ's RFC determination is not supported by substantial evidence. Doc. 9 at 9. The court notes that the responsibility for assessing the RFC falls on the ALJ, and, in doing so, the ALJ must consider "all the relevant evidence in [the claimant's] case record." 20 C.F.R. §§ 416.945(a)(1); 416.946(c).

Consistent with this charge, the ALJ reviewed Anderson's medical record dating back to 2004 and determined that Anderson's impairments limited her, at most, to light work. (R. 20). To reach this determination, the ALJ reviewed the treatment notes from 2006 to 2010 of Jeffrey Harris, M.D. of Huntsville Hospital Neurological Associates, R. 16, 250, 346, 433, and ultimately rejected Dr. Harris' findings. Anderson challenges this decision as reversible error. Doc. 9 at 11.

To evaluate Anderson's contentions, the court will review Dr. Harris' treatment notes and the ALJ's findings related to Dr. Harris. In that regard, the court notes that Anderson presented to Dr. Harris with complaints of chronic and progressively deteriorating back pain. (R. 250, 346). When Anderson visited Dr. Harris in June 2006, Anderson rated her pain at a level 4 out of 10. (R. 250). In 2008, an MRI of Anderson's lumbar spine revealed mild scattered disc desiccation changes, minimal broad-based disc bulge at L4-5, and mild disc osteophyte complex at T11-12. (R. 348). Dr. Harris diagnosed Anderson with lumbar degenerative joint disease with chronic back pain, lumbar radiculopathy and arthritis, and prescribed pain medication. (R. 251, 345). Dr. Harris performed a physical capacities evaluation and opined that Anderson's medical condition could reasonably be expected to produce the pain Anderson described, that the pain was present to such an extent as to distract her from the adequate performance of daily

activities or work, that she had greatly increased pain and to such a degree as to distract from or cause total abandonment of a task, that drug side effects may limit Anderson's effectiveness due to distraction, inattention, and drowsiness, and that climbing and bending has adversely impacted her back pain. (R. 420-422).

The ALJ ultimately rejected Dr. Harris' findings and gave more weight instead to the findings of Dr. Norwood, the consultative examiner. This decision is one of the reasons Anderson contends that the ALJ committed reversible error. "It is well-established that 'the testimony of a treating physician must be given substantial or considerable weight *unless* "good cause" is shown to the contrary.'" *Crawford v. Comm'r of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (emphasis added) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). *See also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "Good cause" exists when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Additionally, the "ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440.

The ALJ found "good cause" existed here to disregard Dr. Harris' opinion, stating that "[b]ased on the conflicting reports of pain in the claimant's testimony and the medical evidence, and based on the minimal objective findings of a back impairment, the undersigned has given greater weight to the assessment of Dr. Norwood, the neurologist specialist, over that of Dr. Harris." (R. 20). As discussed, *supra*, Dr. Norwood found no evidence of physical neurologic impairment to do work activities and found that while Anderson "may be limited by back pain, [] there is no neurologic deficit to produce limitation." (R. 561). In choosing to give more weight to Dr. Norwood, the ALJ also noted that Anderson's alleged level of pain varied significantly from a pain level of 8 or 9 on a 10-point scale during her hearing testimony to significantly lower in Anderson's treatment records, including the 4 she relayed to Dr. Harris in June 2006. Significantly, as the ALJ noted, in January 2010, Therapy and Sports Center records from Huntsville Hospital show low back pain at level 1 to 2 after Anderson's therapy. (R. 20, 491). In other words, the medical evidence belies Anderson's contentions at the hearing and supports the ALJ's findings. In addition to the inconsistencies between the medical notes and Anderson's testimony, the ALJ also reached his decision based on finding no significant objective evidence of a back impairment since Anderson's MRI results showed only mild scattered disc desiccation

changes, minimal disc bulging, and a mild disc osteophyte complex. *See* (R. 20, 348). Based on the inconsistent evidence presented, the ALJ concluded that the opinion of consultative examiner Dr. Norwood was entitled to greater weight than Dr. Harris'. The court finds no error in the ALJ's analysis and notes that it is supported by the substantial evidence.

In addition to Dr. Harris' records, the ALJ also noted that Peter A. Vevon, M.D. of General Surgery Associates, P.C. treated Anderson for gallstones in her gallbladder. (R. 417). When Anderson visited Dr. Vevon in August 2008 for a gallbladder consult, she rated her pain at a level 2 on a 10 scale. *Id*. Dr. Vevon completed a physical capacities evaluation and opined that Anderson's medical condition could not reasonably be expected to produce the pain she described. (R. 424-426). Moreover, Dr. Vevon opined that "obesity is the primary factor that limits the recovery and return to full activity and work, complicated by smoking." (R. 426). Like Dr. Harris' opinions, the ALJ ultimately concluded that Dr. Vevon's opinions were not entitled to controlling weight because they were not well supported by medically acceptable clinical and laboratory diagnostic techniques and were inconsistent with the other evidence in the case record. (R. 21). The substantial evidence supports the ALJ's findings. Moreover, to the extent Anderson claims the ALJ erred as it relates to his assessment of Dr.

Vevon's findings, the court notes that Dr. Vevon's findings actually undermine Anderson's contentions since Dr. Vevon opined that the objective evidence could not reasonably be expected to produce the pain Anderson described. (R. 424-26).

In the final analysis, the law is clear that courts must defer to the ALJ's factfinding and judgments when the ALJ exercises reasoned decision making that is supported by substantial evidence. *See Sullivan*, 849 F.2d at 1529. Moreover, the district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. Based on the court's review of the record as a whole, including the opinions of the physicians, the court finds that the ALJ had sufficient evidence from which to develop the RFC. Moreover, ultimately Anderson has the burden of proving that she is disabled. *See* 20 C.F.R. § 416.912(c). To the extent Anderson claims she is disabled because of her obesity or chronic back pain, she failed to make that showing here. Therefore, the substantial evidence supports the ALJ's RFC determination.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Anderson is not disabled is supported by substantial evidence, and that the

ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**Done** the 8th day of July, 2013.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE